[L.A. No. 30718. Aug. 7, 1978.]

In re the Marriage of RICHARD WILLIAM and
MARILYN BETTY STENQUIST.
RICHARD WILLIAM STENQUIST, Appellant, v.
MARILYN BETTY STENQUIST, Appellant.

## COUNSEL

Hervey, Mitchell, Ashworth & Keeney and Thomas Ashworth III for Appellant Husband.

Rand & Day and Roland B. Day for Appellant Wife.

Gertrude D. Chern as Amicus Curiae on behalf of Appellant Wife.

## OPINION

**TOBRINER, J.**—Retiring after 26 years of military service, husband received a "disability" pension of 75 percent of his basic pay in lieu of a "retirement" pension at 65 percent of basic pay.[1] Although a military "retirement" pension is a community asset (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 604 [111 Cal.Rptr. 369, 517 P.2d 449]), husband claims that his entire "disability" pension is his separate property under our decision in *In re Marriage of Jones, supra,* 13 Cal.3d 457. Looking beneath the label of a "disability" pension, however, the trial court found that only the excess of the "disability" pension rights over the alternative "retirement" pension represented additional compensation attributable to husband's disability; the balance of the pension rights acquired during the marriage, it ruled, served to replace ordinary "retirement" pay and thus must be classed as a community asset.

We agree with the reasoning of the trial court; to permit the husband, by unilateral election of a "disability" pension, to "transmute community property into his own separate property" (*In re Marriage of Fithian, supra,* 10 Cal.3d 592, 602), is to negate the protective philosophy of the community property law as set out in previous decisions of this court. We therefore affirm the judgment of the trial court apportioning husband's

---

[1]We used the labels "disability pay" and "retirement pay" in *In re Marriage of Jones* (1975) 13 Cal.3d 457, 460 [119 Cal.Rptr. 108, 531 P.2d 420]. Sections 1201 and 1401 of 10 United States Code, which govern military retirement benefits, speak only of "retired pay."

pension rights between separate and community assets and dividing the community interest equally between the spouses.

Turning to wife's cross-appeal, we explain that the trial court's order limiting its jurisdiction over spousal support to 24 months conflicts with the policy established in our recent decision of *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41]. Because any assertion that wife will attain economic self-sufficiency within 24 months of the judgment below rests on speculation, not evidence, the trial court's order divesting itself of the power to order spousal support beyond that brief period constitutes an abuse of discretion. We therefore reverse that portion of the trial court's order, remanding the matter for further proceedings in light of this opinion.

 1. *The trial court correctly apportioned husband's pension into community and separate assets.*

In the instant case the husband joined the Army in 1944 and married in 1950. In 1953 he suffered a service-related injury leading to amputation of his left forearm, for which the Army assigned him an 80 percent disability rating. If the husband had retired immediately, his maximum "disability" pay would have been 75 percent of basic pay, compared to a maximum "retirement" pay of 22½ percent of basic pay. He nevertheless continued his military service until he retired in 1970. At that time he faced the choice of taking regular "retirement" pay at the rate of 65 percent of his basic pay, or taking "disability" pay, a stipend equal to 75 percent of basic pay.[2] Assuming the husband desired the higher amount, the Army began making "disability" payments to him.

The husband commenced proceedings for dissolution of the marriage in 1974. The trial court first determined that all pension rights attributable to the husband's military service before marriage, plus the portion of those rights earned during marriage attributable to the husband's disability, constituted his separate property. It then ruled that that portion of the pension rights earned after the marriage equivalent to an ordinary retirement pension, computed on the basis of longevity of service and rank at retirement, constituted a community asset.

---

[2]We note that if the husband had retired four years later, in 1974, both his maximum "disability" and his maximum "retirement" pay would have been 75 percent of his basic pay.

The court finally divided this asset equally between the spouses.[3] The husband appeals from the portion of the judgment awarding his wife part of his pension as community property. The wife also appeals from the judgment below; challenging the court's apportionment, she claims that only that portion of the pension attributable to husband's employment before marriage is separate property.

We begin our discussion of this issue by reviewing the procedure by which a disabled serviceman may compute the amount of "retired pay" to which he is entitled. He may elect, first, to compute his "retired pay" on the basis of his rank and disability by multiplying his monthly basic pay by his percentage of disability. Alternatively, he can compute his "retired pay" on the basis of rank and longevity of service by multiplying his monthly basic pay by 2½ percent times his years of service. (10 U.S.C. § 1401.) Under either formula, he cannot receive more than 75 percent of his last monthly basic pay. The amount of retired pay the serviceman receives under either option therefore depends largely on his monthly pay at retirement, a function of longevity of service and rank; rank itself is closely related to length of service.

In *In re Marriage of Jones, supra,* 13 Cal.3d 457, and *In re Marriage of Loehr* (1975) 13 Cal.3d 465 [119 Cal.Rptr. 113, 531 P.2d 425], its companion memorandum decision, we held that a serviceman's right to "disability" pay, acquired before he had earned a "vested" right to ordinary retirement pay, was separate property. Subsequently in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561], we held that "vested" and "nonvested" pension rights should be treated alike. Relying on those decisions, the husband contends that all military

---

[3] The trial court held that "[t]he ratio of that portion of the marriage from the commencement thereof up until the time of the petitioner's [husband's] retirement from military service, as compared with the entire total service of twenty-five years, eight months and ten days with which petitioner was credited, is seventy-seven percent (77%). The Court therefore finds that had the petitioner retired on longevity retirement pay, the respondent [wife] would be entitled to 38.5% of such pay, as a division of community property, such percentage representing fifty percent (50%) of the amount of such retirement accumulated during coverture . . . . [¶] The Court further finds that . . . the difference in pay between what the Petitioner would have received had he retired on straight retirement for years, and the disability pay which he is actually receiving, is the sole and separate property of the husband, while said lesser sum is community property, as accumulated during coverture. . . . [¶] Pursuant thereto, the Court finds that 65/75ths (86.66%) of the disability retirement pay being received by the Petitioner would be community property to the extent the same was accrued during coverture, and that 77% thereof was so accrued during coverture, hence, 66.73% of said disability retirement pay is community property and one-half thereof (33.36%, rounded off to 33⅓% for convenience, by stipulation) is respondent's share. (86.66%×77%÷2=33⅓%)."

pensions based on disability are now separate property.[4] Closer examination, however, reveals that the reasoning of *Jones* and *Brown* supports the division of the husband's pension which the present trial court ordered.

In *Jones,* we held that when a spouse is entitled to receive a pension only because he is disabled, and *has no right to a pension because of longevity of service,* the disability benefit payments are his separate property upon dissolution of the marriage. At the time *Jones* was decided, however, we deemed the community interest in a nonvested retirement pension a mere expectancy, and not a property interest. (See *French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366].) Since Jones retired before his right to a "retirement" pension vested, his acceptance of "disability" pay did not affect any present community asset, but merely prevented an expectancy from coming into fruition. Recognizing, however, that the principles in *Jones* might not govern a case in which the serviceman had acquired a vested right to retired pay wholly apart from his disability, we expressly limited our decision to cases involving nonvested pensions.

One year following our decision in *Jones* we overturned past precedent and held in *In re Marriage of Brown, supra,* 15 Cal.3d 838, that pension rights, whether or not vested, constituted a property interest; that to the extent that such rights derive from employment during coverture, they now comprise community assets. This holding undermines the fundamental premise of *Jones*: that the award of a serviceman's "disability" pension to the serviceman as his separate property would not impair any community interest of his spouse. Under current law—in contrast to the law prevailing when *Jones* was decided—both the nonvested retirement pension in *Jones* and the husband's vested right to a "retirement" pension in the present case constitute valuable community assets deserving of judicial protection.

---

[4] The wife on her part acknowledges that the trial court arrived at an equitable apportionment of the pension between separate and community interests. She argues, however, that the duty of making such apportionment imposes so great a burden on the courts that we should instead adopt a clear and simple rule that all "disability" payments, the right to which was earned during coverture, are community property. Rejecting this rigid rule and the contention that any other disposition of the issue causes complications, we point out that the method of apportionment adopted by the trial court, which we endorse, does not involve any delicate balancing of equities, but a simple mathematical computation based on the relationship of the "disability" pension to an alternative "retirement" pension. It does not impose a burden so heavy that for reasons of expediency we must settle for the less equitable, all-or-nothing rule wife proposes.

Our reasoning in *Brown* is particularly appropriate to the present case. ■ As we stated there, "[o]ver the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. . . . A division of community property which awards one spouse the entire value of this asset, without any offsetting award to the other spouse, does not represent that equal division of community property contemplated by [the Family Law Act]." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 847.)

■ We cannot permit the serviceman's election of a "disability" pension to defeat the community interest in his right to a pension based on longevity. In the first place, such a result would violate the settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse. (See *Waite v. Waite* (1972) 6 Cal.3d 461, 472 [99 Cal.Rptr. 325, 492 P.2d 13]; *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 650-651 [115 Cal.Rptr. 184].)[5] As the court explained in *In re Marriage of Mueller* (1977) 70 Cal.App.3d 66 [137 Cal.Rptr. 129], a case indistinguishable from the present appeal, the employee spouse retains the right to determine the nature of the benefits to be received.[6] It would be inconsistent with community property principles "to permit that spouse to transmute what would otherwise be community property into his or her separate property." (70 Cal.App.3d at pp. 71-72.)[7]

In the second place, "only a portion of husband's pension benefit payments, though termed 'disability payments,' is properly allocable to disability. It would be unjust to deprive wife of a valuable property right simply because a misleading label has been affixed to husband's pension

---

[5]While in *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851, footnote 14, we disapproved dicta in *Waite* and *Marriage of Peterson* to the effect that nonvested pension rights were not community property, we did not disapprove the holding in those cases that one spouse could not by election destroy the community interest of the other spouse.

[6]Recognition of the nonemployee spouse's interest in the "disability" pension would not limit the employee's freedom "to elect between alternative retirement programs." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 849.) Any serviceman eligible to receive "disability" payments higher than ordinary retirement benefits would remain free to elect the higher payments if he so chose.

[7]We note that the courts of Texas have held that if a serviceman surrenders a vested right to retirement benefits in order to obtain "disability" benefits, the "disability" benefits are community property. (See *Busby v. Busby* (Tex. 1970) 457 S.W.2d 551; *Dominey v. Dominey* (Tex.Civ.App. 1972) 481 S.W.2d 473, cert. den., 409 U.S. 1028 [34 L.Ed.2d 321, 93 S.Ct. 462].)

fund benefits." ▇ ▇▇▇ (*In re Marriage of Cavnar* (1976) 62 Cal.App.3d 660, 665 [133 Cal.Rptr. 267]; see Pattiz, *In a Divorce or Dissolution Who Gets the Pension Rights: Domestic Relations Law and Retirement Plans* (1978) 5 Pepperdine L.Rev. 191, 198 and cases there cited.)[8]

The purpose of disability benefits, as we explained in *Jones,* is primarily to compensate the disabled veteran for "the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian job market" (13 Cal.3d at p. 459) and secondarily to compensate him for the personal suffering caused by the disability. Military retired pay based on disability, however, does not serve those purposes exclusively. Because it replaces a "retirement" pension, and is computed in part on the basis of longevity of service and rank at retirement, it also serves the objective of providing support for the serviceman and his spouse after he leaves the service. Moreover, as the veteran approaches normal retirement age, this latter purpose may become the predominate function served by the "disability" pension.

▇ The present case illustrates the point. The husband here did not retire prematurely from military service to face the prospect of competing on the civilian labor market handicapped by his disability; he served for 26 years, retiring only after he had acquired a vested right to a "retirement" pension. He did not begin to receive his disability pension until 17 years after the injury. The value of his present "disability" pension depends largely on the high military rank he had achieved at the time of retirement and his extensive military service; it does not relate to his rank or longevity at the time of injury. Under these circumstances, the pension's function of compensating the husband for loss of earning capacity or providing recompense for personal suffering is secondary to the primary objective of providing retirement support.

The Court of Appeal in *In re Marriage of Mueller, supra,* 70 Cal.App.3d 66, explained the method of allocating a disability pension between the separate interest of the disabled spouse and the community

[8]As we have affirmed many times, adjustments in the amount of alimony awarded will not mitigate the hardship caused the wife by the denial of her community interest in the pension payments. Alimony lies within the discretion of the trial court and may be modified with changing circumstances: "the spouse 'should not be dependent on the discretion of the court . . . to provide her with the equivalent of what should be hers as a matter of absolute right.' " (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 848.)

interest in the retirement benefits. It stated that "where the employee spouse elects to receive disability benefits in lieu of a matured right to retirement benefits, only the net amount thus received over and above what would have been received as retirement benefits constitutes compensation for personal anguish and loss of earning capacity and is, thus, the employee spouse's separate property. The amount received in lieu of matured retirement benefits remains community property subject to division on dissolution." (70 Cal.App.3d at p. 71.)[9]

The trial court in the present case correctly followed this formula. It first classified as separate property that portion of the husband's pension attributable to employment before marriage. Turning to the balance of the pension, it assigned as separate property only the excess of the husband's pension over the "retirement" pension that he would have received if not disabled; the remainder of the pension it divided as community property.[10] Finding this portion of the trial court's decision in accord with the principles stated in *In re Marriage of Mueller, supra,* 70

---

[9]Although the quoted language from *In re Marriage of Mueller* speaks of "matured" retirement benefits, the court earlier in its opinion made clear that matured benefits could not be distinguished from immature but vested benefits. Indeed in light of *In re Marriage of Brown, supra,* 15 Cal.3d 838, no distinction can be drawn between matured benefits and nonvested benefits.

[10]Contrary to the view advanced in the dissenting opinion, allocation of the "disability" pension between separate and community interests does not discriminate against the disabled. In attempting to demonstrate such discrimination, the dissent first describes a healthy worker who takes some action, such as terminating his employment before his pension vests or working beyond his retirement date, which has the effect of forfeiting all or part of his pension rights. In such a case, of course, the worker's spouse has no claim to any of the forfeited rights; a community share of nothing equals nothing. (See Reppy, *Community and Separate Interests in Pension and Social Security Benefits After Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 426, fn. 31.) The dissent then compares such a healthy worker to a disabled worker who retires and receives a "disability" pension, part of which under the present decision will be classified as community property. Because the spouse of the disabled worker can claim a share in his pension, the dissent concludes that the decision discriminates against the disabled.

The conclusion of the dissent, however, derives from the dissent's inappropriate comparison. If instead of comparing a healthy worker who has forfeited pension rights with a disabled worker receiving a pension, we compare healthy and disabled workers who are both receiving pensions, we discover that under the allocation formula set forth in this opinion the disabled worker usually will retain a higher percentage of the benefits. In the present case, for example, the husband's pension by virtue of his disability is higher than the "retirement" pension of a healthy serviceman of equivalent rank and longevity. Because we allocate to husband the whole of the excess of his "disability" pensions over a "retirement" pension, he receives greater pension benefits than does the undisabled veteran.

Cal.3d 68, and adopted in this opinion, we affirm its division of the marital property.[11]

██ 2. *The trial court abused its discretion by limiting its jurisdiction to modify spousal support to a period of 24 months.*

The trial court ordered husband to pay to wife "as and for her spousal support, the sum of $1.00 per month, payable for a period of twenty-four (24) months, commencing March 1, 1974, subject to the continuing jurisdiction of the Court to alter, modify, or terminate the same upon good cause first being shown." Wife does not challenge the amount of $1 per month, but contends that the 24-month limitation is an abuse of discretion.

Since the court's continuing jurisdiction is not expressly limited to the 24-month period, the order is not entirely clear on its face. The award of $1 per month alimony, however, serves to clarify the meaning of the order. That award plainly is not intended as genuine support for the wife, but to serve as a legal fiction demonstrating the continuing jurisdiction of the court over spousal support. By limiting the $1 per month payments to a period of 24 months, the court impliedly indicated that it did not intend to extend its jurisdiction to modify the award of spousal support beyond the 24-month period.

So interpreted, the trial court's award is inconsistent with our recent decision in *In re Marriage of Morrison, supra,* 20 Cal.3d 437. ██ We stated in *Morrison* that "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (20 Cal.3d at p. 453.)

██ In the present case, the parties had been married for 25 years. Following retirement from the military, husband has not been employed. Wife attempted to start work as a part-time real estate salesperson, but as of trial she earned only about $100 a month. As is so often the case, the

---

[11]Language in *In re Marriage of Jones, supra,* 13 Cal.3d 457, and *In re Marriage of Loehr, supra,* 13 Cal.3d 465, inconsistent with this opinion, is disapproved.

combined income of the parties is insufficient to meet the anticipated expenses of separate living.[12]

If the husband's military pension is divided as ordered by the trial court, husband and wife will have approximately equal monthly incomes; thus the award of only $1 per month in spousal support is not an abuse of discretion. Any attempt to predict conditions of two, five, or ten years hence, however, is a matter of total speculation. Husband may remain unemployed and totally dependent on his military pension; on the other hand his demonstrated talents may yield a well paying job. Wife may or may not succeed as a real estate salesperson.

Both *In re Marriage of Morrison* and the Court of Appeal cases cited with approval in *Morrison* stress that decisions to terminate continuing jurisdiction cannot be based on speculation concerning future earnings and employment. Such decisions should instead be deferred until the realized facts demonstrate whether further support is warranted. As the Court of Appeal explained in *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 738-739 [145 Cal.Rptr. 205]: "[B]y making an order terminating all spousal support . . . without reserving jurisdiction to extend the period, the court put it out of its power to provide any support whatever for wife after that time even if, after maximum effort on her part, she is unable to support herself in a reasonable fashion. There is no justification for the court so 'burning its bridges.' " (See also *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 673 [143 Cal.Rptr. 94].)

We conclude that the trial court abused its discretion in divesting itself of jurisdiction to award spousal support 24 months after the date of the decree. Four years having passed since the trial court rendered its judgment, that court should now reconsider the issue of spousal support in light of the current income and earning potential of the parties, and frame its award in conformity with the principles outlined in this opinion and elucidated fully in *In re Marriage of Morrison, supra,* 20 Cal.3d 437.[13]

---

[12]The record on appeal does not include a reporter's transcript of the brief testimony heard by the trial court. The arguments of the parties suggest that none of this testimony bore on the question of the wife's ability to attain economic self-sufficiency within a period of two years following the decree.

[13]Upon such reconsideration, the trial court may wish to reserve jurisdiction to award spousal support to the husband as well as to the wife if the economic prospects of the parties so warrant.

### 3. *Summary*

We conclude that military retired pay based on disability contains two components: (a) compensation to the serviceman for loss of earning power and personal suffering, and (b) retirement support. The latter component, to the extent that it is attributable to employment during marriage, is community property.[14] The trial court correctly followed this analysis in apportioning the husband's pension rights in the instant case. That court erred, however, in limiting its jurisdiction to award spousal support to the brief period of two years; it should have retained jurisdiction in order to be able to evaluate the parties' needs and capacities in light of future events.

The portion of the judgment limiting the court's jurisdiction to award spousal support is reversed and the cause remanded for further proceedings consistent with the views expressed herein. In all other respects the judgment is affirmed. Marilyn Stenquist shall recover her costs on this appeal.

Bird, C. J., Mosk, J., Richardson, J., Manuel, J., and Jefferson, J.,* concurred.

**CLARK, J.**—I dissent.

Retirement pensions earned during marriage constitute community property, and disability pensions—no matter when the disability occurs—constitute separate property. Under federal law, a veteran who has qualified for both may receive only one. Either the separate property interest or the community property interest must be sacrificed, and the question before us is whether upon dissolution a portion of the disability pension—equal to the amount of retirement pension earned during marriage—shall be held to be community property. On the basis of well-settled principles, authorities and reason set forth in *In re Marriage of Jones* (1975) 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420], it must be concluded the disabled person upon dissolution is entitled to the future

---

[14]Following the policy of *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851, our holding respecting the division of military "disability" pensions applies retroactively only to cases "in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights."

*Assigned by the Chairperson of the Judicial Council.

disability pension payments as separate property, with spousal support available to meet the needs of the nondisabled former spouse in appropriate cases.

To reach the result that part of the disability pension is community, the majority disapprove our recent unanimous decision in *Jones* (by the author of today's opinion), now implying that *Jones* was based on the overruled doctrine of *French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366], which held that nonvested retirement pensions are mere expectancies. (*Ante,* p. 785.) The implication is false; *Jones* did not rely upon the doctrine of *French.* Moreover, by repudiating *Jones,* the majority establish an invidious discrimination between disabled employees and healthy ones who terminate employment, a discrimination betraying a shocking lack of compassion for the handicapped.

## FACTS

Husband entered the Army in 1944 and married in 1950. In 1953 he was injured by shell fragments, suffering amputation of his left forearm. Rather than exercising his right to disability compensation, he chose to remain on active duty.

When husband retired in 1970 at the age of 43, he possessed the options of regular retirement pay based on longevity of service equal to 65 percent of his basic pay, or disability compensation equal to 75 percent of his basic pay. Disability compensation is not subject to federal or state taxes. The Army assumed husband desired the higher amount and began making disability payments to him.

Husband commenced dissolution of the marriage in 1974. The trial court held the difference between *future* disability compensation and regular retirement benefits constitutes husband's separate property. A portion of the pension was attributed to husband's employment *prior* to marriage and was also held to be his separate property. The balance was attributed to employment during marriage and was held to be community property. The court awarded the wife half of all community assets, determined $38,000 was her separate property, granted child support and one dollar per month spousal support for two years.

## Retirement Pensions

Recognizing that retirement benefits are not gratuities but represent deferred compensation for past service, this court has held that anticipated future retirement payments attributable to employment during marriage constitute a community asset divisible upon dissolution. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 841 et seq. [126 Cal.Rptr. 633, 544 P.2d 561]; *In re Marriage of Jones, supra,* 13 Cal.3d 457, 461; *Waite* v. *Waite* (1972) 6 Cal.3d 461, 471 [99 Cal.Rptr. 325, 492 P.2d 13]; *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765].) On this basis, future military retirement benefits have been held divisible as community property. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592, 604 [111 Cal.Rptr. 369, 517 P.2d 449].) The retirement pension is divisible whether vested or nonvested. (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 843-850.) While nonvested pension rights may in theory be divided by determining the present value of the rights, their evaluation must take into account the possibility that death or termination of employment may destroy them before maturity. The uncertainties warrant refusal to divide present value and instead awarding a portion of each pension payment as it comes due. (*Id.,* at p. 848.)

Limitations on the applicability of community property principles to retirement pensions have also been established. Judicial recognition of the nonemployee spouse's interest in pension rights does not limit the employee's freedom to change or terminate his employment, to modify employment terms, including retirement benefits, or "to elect between alternative retirement programs.[12] . . . The employee retains the right to decide, and by his decision define, the nature of the retirement benefits owned by the community." (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 849-850.) Unlike other community property interests, the nonemployee spouse's interests may not be devised or inherited. (*Waite* v. *Waite, supra,* 6 Cal.3d 461, 472-474.) And a provision in the employee benefit plan granting benefits to an employee's "widow" will be enforced to exclude benefits to a spouse married during the employment period where the marriage was dissolved and the employee remarried. (*Id.,* at p. 472, fn. 6; *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32,

---

"[12]In *Phillipson* v. *Board of Administration, supra,* 3 Cal.3d 32, the employee had absconded with most of the community assets; the trial court to equalize the division of community property awarded the spouse all of the employee's pension rights. Under those special circumstances we held that since the employee no longer enjoyed a beneficial interest in the rights, the divorce court could control the employee's election between alternative benefit programs. (3 Cal.3d at p. 48.)"

42-43; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 360-362 [33 Cal.Rptr. 257, 384 P.2d 649]; *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 650 [115 Cal.Rptr. 184].)

These limitations on the applicability of community property doctrine reflect that pension programs not only compensate for past services but are also designed to induce persons to continue in the service of their employer by providing subsistence for employees and their dependents. (*Waite* v. *Waite, supra,* 6 Cal.3d 461, 472-473.) When the various goals conflict, community interests will be sacrificed when necessary to protect the private interests of employers and employees.

### DISABILITY COMPENSATION

Unlike retirement pensions, veteran's disability benefits do not constitute deferred compensation for past services. While longevity of service may be a factor in determining the underlying right to disability compensation and its amount, benefits depend primarily upon physical or mental disability, compensating for loss of earning capacity in the open labor market. Earnings following dissolution are of course separate property. The secondary purpose of disability benefits is to compensate for pain, suffering, disfigurement and resulting misfortune—all personal rather than community concerns. (*In re Marriage of Jones, supra,* 13 Cal.3d 457, 462; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 1, p. 5094.)

Because the main bases for disability compensation are loss of earning capacity and personal damage rather than past services performed, disability compensation is analogous to a personal injury award rather than to a retirement benefit. In *Washington* v. *Washington* (1956) 47 Cal.2d 249 [302 P.2d 569], we held that while personal injury awards recovered during marriage might be classified as community property, a cause of action for such injury becomes the injured spouse's separate property when the cause has not been reduced to judgment prior to the date of divorce. Justice Traynor reasoned that in "such a case not only may the personal elements of damages such as past pain and suffering be reasonably treated as belonging to the injured party, but the damages for future pain and suffering, future expenses, and future loss of earnings are clearly attributable to him as a single person following the divorce. Moreover, as in any other case involving future earnings or other after acquired property, the wife's right, if any, to future support may be protected by an award of alimony." (47 Cal.2d 249, 253-254.)

The Legislature subsequently extended the *Washington* principle to all personal injury damages and settlement payments received after interlocutory decree of dissolution. (Civ. Code, § 5126.)

For the foregoing reasons, we concluded in *In re Marriage of Jones, supra*, 13 Cal.3d 457, 464, that "military disability payments received after dissolution of a marriage should . . . be classified as the separate property of the disabled veteran." (See *In re Marriage of Olhausen* (1975) 48 Cal.App.3d 190, 192 et seq. [121 Cal.Rptr. 444] (police officer disability).)[1]

### WAIVER OF RETIREMENT PENSION

The veteran in *Jones* did not possess a vested right to a retirement pension and we expressly left open the question whether a disability pension, granted after the serviceman obtains a vested right, constitutes separate property. Nevertheless, the reasoning of *Jones* requires our conclusion that disability payments are separate property whether or not the veteran's right to a retirement pension has vested.

*Jones* was decided when the rule existed that nonvested pension rights do not constitute community property divisible on divorce. (*French v. French, supra*, 17 Cal.2d 775, 778.) We later overruled *French* and held that nonvested pension rights are divisible upon dissolution. (*In re Marriage of Brown, supra*, 15 Cal.3d 838, 851.) Rejecting the argument that division of nonvested retirement pensions would infringe upon the employee's freedom to contract, we pointed out that recognition of the nonemployee spouse's interest in vested pension rights does not limit the employee's right to change or terminate employment, to modify employment terms including retirement benefits, or to elect between alternative retirement programs. (*Id.*, at p. 849.)

Because our decision in *Brown* determined that vested and nonvested retirement pensions shall be treated alike, no reason exists to distinguish our holding in *Jones* that disability compensation following dissolution is separate property when a disabled employee possesses nonvested retirement rights. Disability compensation is obviously a legitimate separate property interest, whether the retirement pension is vested or not. And when, as here, direct conflict exists between that interest and the community interest in the retirement pension, one must bow. Resolution

---

[1]The majority's formula implicitly accepts the conclusion that disability benefits are separate property. Under the formula, had there been no retirement benefits, the former spouse of the disabled employee would not be entitled to any of the disability pension.

of the conflict is provided by *Washington* v. *Washington, supra,* 47 Cal.2d 249, 253-254, holding disability compensation separate property but fashioning spousal support to meet the needs of the nondisabled spouse.[2]

Such holding does not result in a deprivation of the spouse's justifiable reliance on a retirement pension. Any such reliance must take into account our holding in *In re Marriage of Jones, supra,* 13 Cal.3d 457, 464 that military disability payments received after dissolution of a marriage are separate property of the disabled veteran if retirement due to disability occurs prior to vesting of a retirement pension. Thus, the spouse is on notice during the entire period when the retirement pension is assertedly earned that should the employee obtain dissolution and retire for disability, the disability payments will be separate.

### THE MAJORITY OPINION

A. *The Excuse to Reconsider In re Marriage of Jones, supra, 13 Cal.3d 457.*

The majority indicate that *Jones* was somehow based on the doctrine of *French* v. *French, supra,* 17 Cal.2d 775, that nonvested pension rights were mere expectancies and thus not subject to division upon divorce as community property. (*Ante,* p. 785.) The majority then reason that because *French* was overruled in *In re Marriage of Brown, supra,* 15 Cal.3d 838, 851, we should now repudiate *Jones.*

The majority's indication that *Jones* was based on the expectancy doctrine is false. As shown above, the basis of *Jones* was that disability pensions are primarily compensation for loss of earning capacity and for pain, suffering, disfigurement, and resulting misfortune—all separate rather than community concerns after dissolution. *Jones* does not cite *French* or mention the expectancy doctrine. And there was a very good reason why it was not mentioned—the justices were fully aware of the likelihood that *French* and the expectancy doctrine would be repudiated. Less than a year earlier, this court in *In re Marriage of Wilson* (1974) 10 Cal.3d 851, 853 [112 Cal.Rptr. 405, 519 P.2d 165], stated in the second and third sentences of the opinion: "We granted a hearing upon the petition

---

[2]Such an approach was followed by the trial court in *Waite* v. *Waite, supra,* 6 Cal.3d 461, 466 in dividing the retired judge's pension and providing for $1 a month support. The court ordered that, in the event the retired judge accepted a temporary judicial assignment thereby suspending pension payments, the support should be increased to an amount equal to the former spouse's share of the pension.

of respondent wife, supported by an implied invitation from the Court of Appeal, to ascertain the current viability of the rule of *French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366], that pension benefits which have not yet vested are a mere expectancy and not subject to division as community property. [¶] Upon further examination of the record it appears this issue is not properly before us . . . ."

All of the justices who participated in *Jones* had participated in *Wilson*, and all participated less than a year after *Jones* when in *Brown*, *French* was disapproved. The right hand knew what the left hand was doing. In the circumstances, while expectancy doctrine could have furnished a basis to reach the result in *Jones*, any reliance upon expectancy doctrine of *French* in *Jones* would have been improper. *Jones* not even mentioning *French* or the expectancy doctrine, it is unreasonable to suggest that *Jones* was somehow based on *French* or the doctrine.

The excuse furnished by the majority for repudiating our recent unanimous decision in *Jones* displays a remarkable lack of candor.

## B. *Results of Repudiation of Jones.*

However contrived the excuse given for reconsidering a recent unanimous decision, however weak the reasons given for repudiating the decision, in the last analysis the results following from the new rule adopted must be weighed on their own merits. When we weigh the majority's determination to repudiate *Jones*, we find that they have established an invidious discrimination between disabled employees and healthy employees who terminate employment when there is a dissolution.

Disapproving *Jones*, the majority purport to rely upon *In re Marriage of Brown*, *supra*, 15 Cal.3d 838. Both *Jones* and *Brown* dealt with employees who had *nonvested* retirement pension rights. *Brown* was concerned with employees generally without focusing on those who were disabled. *Brown* held that nonvested retirement pensions would be community property like vested ones. However, recognizing that nonvested pension rights might be destroyed by death or termination of employment before vesting, this court held that the uncertainties warrant refusal to divide present value of the pension and instead awarding a portion of each pension payment as it comes due. (*In re Marriage of Brown*, *supra*, 15 Cal.3d 838, 848.) This court carefully pointed out that judicial recognition of the nonemployee spouse's interest in pension

rights does not "limit" the employee's freedom to change or terminate employment. "The employee retains the right to decide, and by his decision, the nature of the retirement benefits owned by the community." (*Id.,* at pp. 849-850.)

In short under *Brown* when the healthy employee having only *nonvested* retirement rights terminates his employment—perhaps for more lucrative employment—the nonvested pension rights are lost with the employee owing no obligation to compensate a former spouse for the loss of the nonvested pension rights. Under *Jones,* a comparable result was reached—the disabled employee having nonvested retirement rights who terminated employment and received a disability pension was not required to compensate the former spouse for loss of the nonvested pension rights.

By disapproving *Jones,* the majority single out the handicapped and compel them to compensate former spouses for loss of nonvested pension rights due to termination of employment. The disabled are placed in a worse position than the healthy who terminate employment. Former spouses of the disabled are given benefits when former spouses of the healthy are denied similar benefits.

The disabled are also placed in a worse position than the healthy employee who continues his employment. There is no liability to former spouses because there are no retirement benefits. The employee may continue to work until he dies in which event there may never be retirement pension payments. On the other hand, the employee who retires for disability under today's majority decision immediately must pay part of the disability pension to the former spouse. The former spouse of the disabled employee is entitled to benefits upon payment of the disability pension, when had the employee remained healthy the former spouse might not have been entitled to any benefits and at most could only receive delayed benefits.[3]

Both federal and state law prohibit discrimination against the handicapped in employment. (See, e.g., 29 U.S.C. § 793; Lab. Code, §§ 1430, 1735.) Today, the majority not only permit but require discrimination against the disabled who are compensated for their inability to compete in

---

[3]The majority in footnote 10 suggest that the proper comparison is between healthy employees who receive pension payments and the disabled. The comparison is not in point because no payments are made under nonvested pensions. The pension must be vested before there are payments.

the labor market—discrimination essentially against the unemployed handicapped. I cannot join in the majority's discrimination; I cannot share their lack of compassion.

Primarily, there are three situations where there is a clear difference in the practical effects of the majority's determination to give the former spouse an interest in the disability pension and my approach to hold that the pension is separate property with spousal support available to meet the needs of the former spouse. The three situations involve justification to deny or severely limit spousal support. The disability pension and other economic resources available to the disabled employee may be insufficient to meet his needs, warranting denial of spousal support. The former spouse may have sufficient economic resources so that little or no support is required. The former spouse may remarry terminating spousal support. (Civ. Code, § 4801.)[4] In all three situations the balance of equities falls in favor of the disabled employee.

## C. *The Majority's Settled Principle.*

Relying upon *Waite* v. *Waite, supra,* 6 Cal.3d 461, 472, and *In re Marriage of Peterson, supra,* 41 Cal.App.3d 642, 650-651, the majority proclaim the "settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse." (*Ante,* p. 786.)

However, the cases cited do not stand for the so-called "settled principle," but hold only that the possibility the employee may elect to forego an otherwise vested pension does not unvest that pension. (*Waite* and *Peterson* were decided prior to this court's decision in *Brown* holding that nonvested pensions are community property subject to division upon dissolution.)

Moreover, the so-called "settled principle" is contrary to *Brown* because, as we have seen, the employee is free to change or terminate employment, modify retirement terms, or elect between alternative retirement programs. (*In re Marriage of Brown, supra,* 15 Cal.3d 838, 849-850.) Dissolution of the marriage does not require an employee to retire at the earliest possible age; rather he may forego retirement and

---

[4]Death of the obligor ordinarily terminates spousal support (Civ. Code, § 4801), but employee pension payments ordinarily terminate on death of the employee. As pointed out earlier, surviving spouse benefits are paid only to surviving spouses, not former spouses who may have been married to the employee during the period of employment.

continue working in which case there are no retirement payments to divide and the earnings after dissolution will be the employee's separate property or community property of any new marriage.[5]

I would reverse the judgment.

---

[5]*In re Marriage of Cavnar* (1976) 62 Cal.App.3d 660 [133 Cal.Rptr. 267], is distinguishable on its own terms. In that case, the husband, after obtaining retirement payments at the age of 59, converted his retirement benefit plan to a disability retirement plan, receiving increased benefits. The court held that the portion of the disability benefits which could have been received as retirement benefits was a community asset. The court pointed out that *In re Marriage of Jones, supra,* 13 Cal.3d at page 462 and *In re Marriage of Olhausen, supra,* 48 Cal.App.3d at pages 193-194, holding disability pay was separate property were based on the characterization of disability benefits "as compensation for personal anguish and diminished earning capacity." The court then went on to reason that, because the husband had already retired before electing disability pay, that pay could not be characterized as compensation for diminished earning capacity or for inability to compete in the labor market. It was concluded that only part of the disability pay could be properly allocated to disability. (62 Cal.App.3d at p. 665.)

By way of contrast, in the instant case the husband commenced receiving disability pay at the age of 43, he did not receive retirement pay, and it is clear that his disability pay is compensation for the diminished ability of a one-armed man to compete in the labor market.

I would disapprove *In re Marriage of Mueller* (1977) 70 Cal.App.3d 66 [137 Cal.Rptr. 129].