[Civ. No. 49867. First Dist., Div. Three. June 4, 1982.]

In re the Marriage of GERALDINE. LILLIAN and JOHN WESLEY PACE.
GERALDINE LILLIAN PACE, Appellant, v.
JOHN WESLEY PACE, Respondent.

Counsel

Hansen, Custer & Bratter, Daniel J. Custer and Charles A. Hansen for Appellant.

Howard Moore, Jr., and Sarah L. Lawrence for Respondent.

Opinion

**SCOTT, Acting P. J.**—Appellant Geraldine Pace appeals from a judgment providing that federal civil service disability retirement benefits paid monthly to her former husband, respondent John Pace, are his separate property.

I

Geraldine and John were married in 1947 and separated in 1974. Throughout their marriage, John was employed by the federal Veterans' Administration. In October 1975, the parties entered into a property settlement agreement. Among its provisions, Geraldine was awarded a seven-fifteenths interest in the retirement benefits arising out of John's employment as of the date of separation, "whether accumulations or anticipated retirement at the age of 55," as her share of the community interest in those benefits. She waived spousal support.

On December 5, 1975, John was seriously injured in an automobile accident. On December 19, 1975, apparently while John was hospitalized, an interlocutory judgment of dissolution was entered consistent with the property settlement agreement.[1] As a result of the accident, John became totally disabled, and was involuntarily retired. He is a quadraplegic, confined to bed except when someone dresses him and straps him in a wheelchair. He requires constant supervision and care, and is unable to do anything for himself unaided. His present wife, a registered nurse, works at night and cares for him during the day.

John is entitled to receive monthly disability benefits of approximately $952 from the federal Civil Service Retirement System. In 1977, when John reached age 55, the age at which he would have been eligi-

---

[1] While neither the settlement agreement nor the interlocutory judgment has been included in the record on appeal, the relevant terms appear to be undisputed.

ble to retire for longevity had he not been disabled, Geraldine sought to claim a seven-fifteenths share of John's pension pursuant to the property settlement agreement. The longevity benefits would be in the same amount as his disability benefits. After a hearing,[2] the trial court compared the situation to a pension fund gone bankrupt or to an award of damages for personal injury, and concluded that the monthly payments are now and will continue to be his separate property.

## II

█ Relying on *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96], *In re Marriage of Webb* (1979) 94 Cal.App.3d 335 [156 Cal.Rptr. 334], and *In re Marriage of Samuels* (1979) 96 Cal.App.3d 122 [158 Cal.Rptr. 38], Geraldine contends that since John's 55th birthday he has been receiving a pension based on longevity rather than disability and that she is entitled to her community interest in that pension. John contends that because he is totally disabled and did not voluntarily retire, *Stenquist, Webb*, and *Samuels* are inapplicable, and his benefits will always be his separate property.

█ Pension or retirement benefits are not gratuities, but are deferred compensation for past services rendered by an employee. (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 845 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) Pension rights, whether or not vested,[3] represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding. (*Id.*, at p. 842.) The value of pension rights frequently represents the most important asset of the marital community. (*In re Marriage of Stenquist, supra*, 21 Cal.3d at p. 786.)

---

[2] After the trial court expressed concern as to whether this issue should have been raised in a new action rather than in a motion to modify the property settlement incorporated in the judgment of dissolution, the parties stipulated to waive any procedural defects.

[3] In dissolution cases, a pension right is "nonvested" if it is subject to forfeiture if the employment relationship terminates prior to retirement. The right is "vested" if it would survive the discharge or voluntary termination of the employee, and "matured" if the employee has an unconditional right to immediate payment (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 842), or if all conditions precedent to payment of the benefits have taken place or are within the control of the employee. (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 422, fn. 2 [174 Cal.Rptr. 493, 629 P.2d 1].)

In *Stenquist*, a husband who retired after 26 years of military service received a "disability" pension of 75 percent of his basic pay instead of a "retirement" pension of 65 percent of that pay. Upon dissolution of his marriage, he urged that his disability pension was his separate property. The Supreme Court disagreed, and held that only the excess amount over the "retirement" pension that he would have received if not disabled was separate property; the remainder of the pension, to the extent that it derived from employment during marriage, was community. (*In re Marriage of Stenquist, supra*, at p. 788.)

The court justified its conclusion on two separate grounds. First, permitting the serviceman to elect a disability pension and defeat the community interest in his right to a longevity pension would violate the principle that one spouse cannot, by invoking a condition wholly within his or her control, defeat the community interest of the other spouse. Second, despite the label "disability," only a portion of the pension benefits were properly allocable to disability. The court noted that military retirement pay based on disability serves dual purposes: to compensate for loss of earnings and diminished ability to compete in the civilian job market, and to provide support for the serviceman and his spouse after he leaves the service. The court stated that as the veteran approaches normal retirement age, the latter purpose becomes the predominant function served by the "disability" pension. (*In re Marriage of Stenquist, supra*, 21 Cal.3d at p. 787.)

In *In re Marriage of Webb, supra*, 94 Cal.App.3d 335, this court considered the pension of a San Francisco policeman who was compelled to retire prematurely because of disability. He received a retirement allowance calculated by his final salary times his percent disability. According to the city charter, when he reached the age at which he would have qualified for longevity retirement but for his incapacity, his retirement allowance would be recalculated to equal the amount he would have received had he worked without interruption until eligible for longevity retirement. We recognized that unlike serviceman Stenquist, Officer Webb did not elect disability retirement. Nevertheless, we were compelled by *Stenquist* to conclude that when Webb's benefits were recalculated to equal longevity retirement benefits, their predominant function from that date on would be to provide retirement support rather than to compensate for loss of earnings resulting from compelled premature retirement. Accordingly, those benefits, to the extent they derived from employment during marriage, were community. (*Id.*, at p. 342.)

A retirement annuity of a federal civil service employee was at issue in *In re Marriage of Samuels, supra*, 96 Cal.App.3d 122, as it is in this case. In *Samuels*, shortly after husband and wife were married in 1942, he became a federal civil service employee. In 1971, at age 50, he terminated his employment due to an injury and began receiving monthly disability benefits pursuant to the federal Civil Service Retirement System. (5 U.S.C. § 8331 et seq.)[4] Because he had completed a minimum of five years of service prior to incurring his disability, he was eligible for a "disability retirement annuity" (§ 8337), to be computed by a formula based on service longevity and average pay. (§ 8339(a).) Unlike the system at issue in *Webb*, the federal employee's percent disability was not a factor in the computation of his disability benefits. Nor was there any recomputation of benefits at the age at which the employee would have been eligible for longevity retirement but for his disability. However, the disabled federal employee would also be eligible for a "deferred retirement annuity" at age 62 (§ 8338),[5] computed in the same manner as his disability annuity. (§ 8339(a).)

The court held that until husband reaches age 62, his monthly benefits serve the principal purpose of compensating him for his injury, including loss of earnings and diminished earning capacity, and constitute separate property. However, once he is 62, the predominant purpose of his benefits will shift to retirement support. At that point, because those benefits are attributable to employment during marriage, they constitute divisible community property regardless of how they are labeled. (*In re Marriage of Samuels, supra*, 96 Cal.App.3d at p. 128.) ▮ In this case, as in *Samuels*, the husband was forced to retire because of a disability after he had served well over the minimum number of years which entitled him both to a disability retirement annuity and to a deferred retirement annuity at age 62. Until he reaches that age, his benefits compensate him for his injury and are his separate property; at age 62, the benefits serve as retirement support and are divisible community property. We need not consider how the benefits should be divided, as the parties have agreed that Geraldine's share is seven-fifteenths.

---

[4]Unless otherwise indicated, all statutory references are to title 5 of the United States Code.

[5]An employee who completes 30 years service and attains age 55 is eligible for "immediate retirement," as is an employee who completes 20 years of service and attains age 60. (§ 8336(a), (b).) If ineligible for immediate retirement, an employee who has completed five years of service is eligible for a "deferred retirement" annuity beginning at age 62. (§ 8338(a).)

John argues that because he is totally disabled, *Samuels* is factually distinguishable and therefore not controlling. We cannot agree. We regret John's tragic accident and sympathize with his plight, but we cannot classify his pension as separate because of the severity of his disability. The nature or extent of that disability does not alter the fact that his entitlement to a retirement pension at age 62 derives from his employment during marriage. That retirement pension is a community asset, which must be divided with Geraldine.

Relying on *Samuels* but apparently ignoring its holding, Geraldine argues that John's benefits have been retirement benefits since age 55, the age at which he could have retired for longevity had he not been disabled. We disagree. Geraldine's argument is based on the faulty premise that when John reached age 55, he became eligible to receive longevity retirement benefits. However, at the time of the property settlement agreement, as well as when John was injured, his right to a pension at age 55 was a nonvested, immature right, which would have both vested and matured had he continued to work until age 55. Unlike the pension system at issue in *Webb*, John's disability benefits were not recalculated at the age at which he could have retired but for his disability. John's right to a longevity pension at age 55 failed to vest when he involuntarily left his employment, just as it would have failed to vest had he voluntarily quit. The risk that the pension would not vest was a risk shared by Geraldine when she entered into the property settlement agreement. (See *In re Marriage of Brown, supra*, 15 Cal.3d at p. 848.)

Judgment is reversed, and the trial court directed to enter judgment that appellant is entitled to seven-fifteenths of the pension benefits paid respondent, commencing when he is 62. Each party shall bear his or her own costs and attorney's fees on appeal.

Feinberg, J., and Barry-Deal, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 28, 1982.