Landen S. LEVY, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 89–3361.

United States Court of Appeals,
Federal Circuit.

May 11, 1990.

Douglas B. Cone, Merced, Cal., submitted for petitioner.

Hillary A. Stern and John F. Edwards, Dept. of Justice, Washington, D.C., submitted for respondent. Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and Marcia A. Lurensky, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief for respondent. Also on the brief were James S. Green, Acting Gen. Counsel, Thomas F. Moyer, Asst. Gen. Counsel, and Murray M. Meeker, Attorney, Office of Personnel Management, of counsel.

Before NIES and ARCHER, Circuit Judges, and KELLEHER, Senior District Judge.[*]

KELLEHER, Senior District Judge.

This is a petition for review of a decision of the Merit Systems Protection Board ("Board"), *Levy v. OPM*, 41 M.S.P.R. 139, which affirmed a decision by respondent Office of Personnel Management ("OPM"). Respondent ordered the apportionment of petitioner Landen S. Levy's ("Levy") federal civil service retirement benefits under a California divorce judgment. The question we are asked to resolve is whether the Board erred in concluding that, under the divorce judgment and California community property law, Levy's former spouse was entitled to one-half of the total monthly benefits Levy was due to receive upon reaching the age of 62. We reverse and remand.

[*] Honorable Robert J. Kelleher, Senior District Judge for the Central District of California, sitting by designation.

## I

After more than six years as a federal civil servant, Levy became disabled and retired in 1966. Upon his retirement, Levy was awarded disability retirement benefits pursuant to 5 U.S.C. § 8337.[1] His payments began immediately after retirement; currently, the monthly amount Levy receives is $1,460.00. Had Levy's retirement been for non-disability reasons, he would have been eligible on reaching age 62 for longevity retirement benefits under 5 U.S.C. § 8338.[2] Levy's calculations suggest that, had he retired under 5 U.S.C. § 8338, he currently would be receiving $85.58 per month.

Petitioner was married to Carol A. Levy throughout the duration of his civil service. On March 7, 1983, their marriage was dissolved by the Orange County Superior Court in the State of California pursuant to an Interlocutory Judgment of Dissolution of Marriage ("Divorce Judgment"). In addition to granting their divorce, the Divorce Judgment resolved the Levys' respective property rights under California's community property laws. California law treats retirement benefits earned during marriage as community property subject to division at divorce; accordingly, the Divorce Judgment provided for the division of Levy's civil service retirement benefits.

Two provisions of the Divorce Judgment concern the division of Levy's federal entitlements. The first provision, found in paragraph 7, states in pertinent part:

> Husband's civil service retirement are [sic] found to be community property upon husband obtaining the age of sixty-two (62). One-half of all such benefits due after husband reaches the age of sixty-two (62) are [sic] awarded to wife as her sole and separate property and one-half is awarded to husband as his sole and separate property.[3]

The second provision, found in paragraph 12, provides that "[t]he disability payments are confirmed to husband as his separate property."

When Levy turned 62 on October 3, 1985, OPM acted on Carol Levy's application for apportionment of Levy's retirement benefits.[4] Under 5 U.S.C. § 8345(j)(1) (1982),

---

1. Title 5 U.S.C. § 8337 (1982) provides in relevant part: "(a) An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee's own application.... An annuity authorized by this section is computed under section 8339(g) of this title, unless the employee ... is eligible for a higher annuity computed under section 8339(a)–(e) or (n)."

2. Title 5 U.S.C. § 8338 (1982 & Supp. V 1987) provides in relevant part:

   (a) An employee who is separated from the service ... after completing 5 years of civilian service is entitled to an annuity beginning at the age of 62.

   ....

   (d) An annuity or reduced annuity authorized by this section is computed under section 8339 of this title.

3. One aspect of paragraph 7 deserves brief mention. As originally drafted, paragraph 7 began "Husband's civil service retirement disability benefits...." Before signing the Divorce Judgment, however, the trial court crossed out the words "disability benefits" and initialed the change. We express no opinion concerning the trial court's intent in eliminating "disability benefits" from paragraph 7, and we interpret the provision according to its terms as entered by the trial court.

4. Mrs. Levy's application was fraught with procedural irregularities. As part of her application, she submitted an "Amended Interlocutory Judgment" of the Orange County Superior Court dated April 5, 1983 which significantly (and materially) altered the language of paragraphs 7 and 12 of the original Divorce Judgment. The "Amended Interlocutory Judgment" was later set aside by order of the Orange County Superior Court dated May 19, 1986. Consequently, the original Divorce Judgment was reinstated, and OPM proceeded to apportion Levy's retirement benefits according to the language of the original Divorce Judgment.

   Levy claims that the "Amended Interlocutory Judgment" was fraudulently obtained by Mrs. Levy in an *ex parte* fashion and premises two equitable arguments on this claim. Specifically, he argues that California recognizes the "clean hands" and "no one can take advantage of his [or her] own wrong" doctrines, and that Mrs. Levy's allegedly fraudulent acts in obtaining the "Amended Interlocutory Judgment" estop her from claiming an entitlement to any portion of Levy's annuity payments.

   Because we conclude that the Board and OPM erred in their interpretations of California community property law, we need not address Levy's equitable arguments. Consequently, we express no opinion concerning Levy's allegations of fraud, or the effect, if any, such conduct

OPM was required to apportion Levy's retirement benefits "to the extent expressly provided for in the terms of any court decree of divorce." OPM concluded that under the language of the Divorce Judgment and California law, his former spouse was entitled to one-half of Levy's total monthly benefits when he reached age 62, despite the fact that Levy's monthly entitlement would have been significantly less than the amount he in fact received if he had retired in 1966 for nondisability reasons.

After an intermediate appeal to the Board's San Francisco Regional Office, the case was heard before the full Board. As noted above, the full Board sustained OPM's final decision, holding that Mrs. Levy was entitled to one-half of Levy's total monthly benefits. Thereafter, Levy petitioned this Court for review.[5]

We have jurisdiction to hear this petition under 28 U.S.C. § 1295(a)(9).[6] Under 5 U.S.C. § 7703(c) (1982), the Board's action must be affirmed unless it is found to be *inter alia,* "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See also Gonce v. Veterans Admin.,* 872 F.2d 995, 997 (Fed.Cir. 1989); *Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984). In addition, we are mindful that under the Civil Service Retirement Act, OPM's interpretation of the Act and the regulations thereunder are entitled to deference and "should be followed unless there are compelling indications that it is wrong." *Money v. Office of Personnel Management,* 811 F.2d 1474, 1477 (Fed.Cir.1987). In this case, the Board's interpretation of the Divorce Judgment was contrary to California law and is undeserving of deference.

## II

Our starting point for analysis is the California Supreme Court decision in *In re*

*Marriage of Stenquist,* 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978). In *Stenquist,* the husband became disabled after nine years of military service but continued on active duty until he had served twenty-six years. Before retirement, the husband was entitled either to a regular longevity retirement annuity at 65% of his base pay, or to a disability retirement annuity at 75% of his base pay. Not surprisingly, the Army assumed he wanted the higher rate and paid the disability retirement.

The Stenquist marriage was dissolved after the husband's retirement. The California Supreme Court addressed the question of how, under California's community property principles, to divide retirement benefits based in part on disability. The court initially recognized that

> The purpose of disability benefits ... is primarily to compensate the disabled veteran for "the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian job market" and secondarily to compensate him for the personal suffering caused by the disability (citation omitted).

*Id.* at 787, 148 Cal.Rptr. at 14, 582 P.2d at 101.

The court also recognized that a retirement pension "based on disability ... does not serve those purposes exclusively." *Id.* A pension of this type "also serves the objective of providing support for the serviceman and his spouse after he leaves the service." *Id.* Indeed, "as the veteran approaches normal retirement age, this latter purpose may become the predominate function served by the 'disability' pension." *Id.*

The court explained the proper method of allocating a disability pension between the separate interest of the disabled spouse and the community interest in the retirement benefits as follows:

---

would have under California law on Mrs. Levy's rights as provided in the original Divorce Judgment.

**5.** The case was submitted for decision on the briefs without oral argument.

**6.** Title 28 U.S.C. § 1295(a)(9) (1982) provides in relevant part that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction ... of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5."

[W]here the employee spouse elects to receive disability benefits in lieu of a matured right to retirement benefits, only the net amount thus received over and above what would have been received as retirement benefits constitutes compensation for personal anguish and loss of earning capacity and is, thus, the employee spouse's separate property. The amount received in lieu of matured retirement benefits remains community property subject to division on dissolution.

*Id.* at 788, 148 Cal.Rptr. at 14, 582 P.2d at 102.

In summarizing its decision, the court concluded that "military retired pay based on disability contains two components: (a) compensation to the serviceman for loss of earning power and personal suffering, and (b) retirement support. The latter component, to the extent that it is attributable to employment during marriage, is community property." *Id.* at 791, 148 Cal.Rptr. at 16, 582 P.2d at 103.

The fact that *Stenquist* involved a military pension, as opposed to a civil service pension, is a distinction without a difference because the purposes of both pensions remain the same. Hence, under *Stenquist,* the amount Levy receives each month over and above what would have been received as retirement benefits is Levy's separate property; the remainder, that is, the amount Levy would have received as retirement benefits had he not retired for disability reasons, is divisible community property and therefore subject to apportionment upon Levy's reaching 62.

It appears that Levy would be entitled to far less per month under a regular longevity retirement (due to the fact he only worked six years as a civil servant) than the amount he is currently receiving.[7] Only the amount attributable to retirement is properly subject to division; the remaining amount is attributable to Levy's disability, not retirement, and therefore his sole

and separate property. The Board and OPM both erred in their applications of *Stenquist* by awarding Levy's former spouse one-half of Levy's *total* monthly annuity payments.

Subsequent California cases have applied the *Stenquist* principles in a manner consistent with our own. In *In re Marriage of Justice,* 157 Cal.App.3d 82, 204 Cal.Rptr. 6 (1984), the husband, a police officer, retired after being disabled by gunshot wounds. His disability retirement came just two months before he would have been able to retire upon completion of 20 years active service. When the 20–year date arrived, he was receiving a disability pension of $3,201.25 per month. Had he retired on that date for nondisability reasons, he would have received a service pension, based on longevity alone, of $1,804.03 per month.

The court, utilizing the *Stenquist* analysis, concluded:

Only the sum of $1,397.22—the excess of the "disability" pension over and above what he would have received as a service pension—is [the husband's] separate property attributable to compensation for disability. The balance of $1,804.03 performs the function of normal service retirement benefits which, although not vested when [the husband] was retired for disability, are community property to the extent they were earned during the marriage.

*Id.* at 89, 204 Cal.Rptr. at 10–11. Accordingly, the court awarded Mr. Justice's former wife one-half "the community interest in such retirement benefits." *Id.* at 89, 204 Cal.Rptr. at 11. *Cf. In re Marriage of Briltz,* 141 Cal.App.3d 17, 20–21, 189 Cal. Rptr. 893, 896 (1983) (when the amount of longevity pension is slightly higher than the disability entitlement, the entire disability entitlement is divisible community property); *In re Marriage of Pace,* 132 Cal. App.3d 548, 553–554, 183 Cal.Rptr. 314, 317–318 (1982) (when the longevity and dis-

---

**7.** On remand, the Board is to direct OPM to perform one simple task: to determine the monthly amount of regular longevity benefits to which Levy would have been entitled under 5

U.S.C. § 8338 on reaching age 62 had he retired for non-disability reasons in 1966. Mrs. Levy is entitled to one-half of that amount.

ability payments would be the same amount, there is no excess and the full amount is divisible community property).

The Board purported to rely on *In re Marriage of Samuels*, 96 Cal.App.3d 122, 158 Cal.Rptr. 38 (1979) in holding that when Levy turned 62, the benefits he receives serve "as retirement support based on his past service longevity (six years) and are no longer considered disability compensation resulting from premature retirement." A close examination of *Samuels*, however, demonstrates that the Board's reliance is misplaced.

In *Samuels*, the husband had completed almost 29 years of federal civil service before retiring for disability reasons. Like Levy, Mr. Samuels was awarded a disability annuity under 5 U.S.C. § 8337. At that time, Mr. Samuels was 50 and would become eligible for a longevity annuity when he reached 62. Because Mr. Samuels had nearly 29 years of creditable longevity service, the formula for determining the amount of his disability annuity resulted in an entitlement identical to the longevity retirement amount. As in *Pace, supra,* the net differential was zero, and the court properly divided the entire disability annuity as community property.

In the instant case, Levy has only six years of creditable service, unlike the 29 years in *Samuels*. Because Levy's service was relatively brief, the formula for determining the amount of his disability annuity results in an amount far greater than the longevity annuity to which he would have been entitled had he not retired for disability reasons. *Samuels* does not, as the Board suggests, stand for the proposition that the nature of disability compensation resulting from premature retirement shifts completely once the recipient turns 62. Rather, *Samuels* is a straightforward application of the *Stenquist* principles that recognize that once a recipient turns 62, *one component* of the monthly compensation is based on longevity of service, and only that component of the monthly amount is subject to division; the remainder, if any, is based on the disability component and is the recipient's separate property.

We conclude that the Board's decision is contrary to controlling California law. We hold that only that portion of Levy's monthly compensation (after reaching age 62) attributable to Levy's longevity of service is community property and subject to division under the Divorce Judgment. Because the Board based its apportionment on the full amount of Levy's monthly compensation, most of which is attributable to Levy's disability, the Board's decision is not in accordance with California law and must therefore be set aside under 5 U.S.C. § 7703(c)(1).[8]

### III

Accordingly, we reverse and remand the decision of the Board. As previously noted, on remand the Board is to enter an order requiring respondent OPM to calculate the amount of regular longevity bene-

---

**8.** Respondent OPM argues that we should affirm the Board because (1) OPM's interpretations of the Civil Service Retirement Act are entitled to deference and (2) the Board decision thoroughly reviews the relevant provisions of the Divorce Judgment and supplies more than substantial evidence for its conclusion that OPM's interpretation of the Judgment and California law was "eminently reasonable."

While it is true that OPM's interpretation of the Civil Service Retirement Act is entitled to great deference, in this case OPM was interpreting California law, not the Civil Service Retirement Act. As previously discussed, 5 U.S.C. § 8345(j)(1) requires OPM to apportion federal annuities as provided in state court divorce decrees, which in turn requires OPM to look to the relevant state's marital property laws. Here California law applies. No amount of deference can sustain a federal agency's interpretation *of state law* when, as here, the agency's interpretation is in direct conflict with decisions of the state's highest court concerning that state's marital property laws. Consequently, the deference to which OPM contends it is entitled is misplaced.

OPM appears satisfied that its interpretation of the Divorce Judgment and California law was "eminently reasonable." That is not the proper test. We disregard it and decide, as we must, that OPM's interpretation is contrary to law.

fits to which Levy would have been entitled had he retired in 1966 under 5 U.S.C. § 8338 and to pay Mrs. Levy one-half of that amount.

COSTS

Respondents will bear the costs of the appeal.

REVERSED AND REMANDED.