William R. VAGG, Petitioner,

v.

OFFICE OF PERSONNEL
MANAGEMENT,
Respondent.

No. 92–3529.

United States Court of Appeals,
Federal Circuit.

Aug. 3, 1993.

Douglas B. Cone, Merced, CA, argued for petitioner.

Edmund W. Chapman, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Franklin E. White, Jr., Dept. of Justice, represented respondent. Also on the brief were Arthur Troilo, III, Gen. Counsel and Earl A.

Sanders, Atty., Office of Gen. Counsel, Office of Personnel Management, of counsel.

Before PLAGER, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

SMITH, Senior Circuit Judge.

William R. Vagg appeals from the 25 June 1992 order of the Merit Systems Protection Board (Board)[1] denying his petition for review of the Board's initial decision,[2] which affirmed the 10 June 1991 reconsideration decision of the Office of Personnel Management (OPM). The Board held that Vagg's divorced spouse is entitled to 48.49% of Vagg's gross civil service retirement annuity computed on the basis of a hypothetical deferred annuity under 5 U.S.C. § 8338, effective on the date of Vagg's actual retirement on the grounds of disability pursuant to 5 U.S.C. § 8337, and increased by all cost-of-living-adjustments under 5 U.S.C. § 8340. We affirm.

## Issue

Whether the Board erred in computing, under California state law as interpreted by this court's prior decision, *Levy v. Office of Personnel Management*,[3] the apportionment, ordered by a California decree of divorce, of Vagg's civil service retirement annuity.

## Background

William R. Vagg retired under the disability retirement provisions of the Civil Service Retirement System (CSRS), 5 U.S.C. §§ 8331, 8337[4] (1988 & Supp. I 1989, Supp. II 1990, Supp. III 1991), effective 30 October 1974 after more than 27 years of federal service. He immediately began to receive a disability annuity calculated according to his years of service under 5 U.S.C. § 8339(a) (1988).[5] The amount of Vagg's disability annuity was increased by periodic cost-of-living-adjustments (COLA's).

At the time of his separation from federal service, Mr. Vagg had not met the eligibility requirements for an immediate non-disability retirement—30 years of service and age 55. 5 U.S.C. § 8336(a) (1988).[6] Vagg had completed 27 years of service and was 46 years old. If Vagg had resigned from federal service in 1974 rather than retiring on disability, he would not have received any retirement benefits until 1990 when he would have met the minimum requirements for a non-disability deferred retirement annuity—5 years of service and age 62. 5 U.S.C. § 8338(a) (1988).[7] The amount of a non-disability deferred retirement annuity under section 8338 is not increased by COLA's in the interim of time between separation from federal service and the future date when the former employee reaches age 62 and begins receiving retirement payments.

## Facts

Vagg and his former spouse, Barbara, residents of California, divorced in 1984. On 11 December 1987, pursuant to the decree of divorce, the Superior Court of California for the County of Nevada issued a judgment which, in part, directed that Vagg's civil ser-

1. *Vagg v. Office of Personnel Management*, 54 M.S.P.R. 250 (MSPB 1992).

2. *Vagg v. Office of Personnel Management*, No. SF0831920235–I–1 (MSPB Mar. 10, 1992).

3. 902 F.2d 1550 (Fed.Cir.1990).

4. 5 U.S.C. § 8337 (1988 & Supp. I 1989, Supp. II 1990, Supp. III 1991) provides in relevant part: "(a) An employee who completes 5 years of civilian service and has become disabled shall be retired on the employee's own application or on application by the employee's agency."

5. Under 5 U.S.C. § 8339(g) (1988 & Supp. I 1989, Supp. II 1990, Supp. III 1991), a disability annuitant is entitled to an annuity of at least 40% of his highest average pay for 3 years. Vagg, however, had sufficient service (more than 21 years 11 months) so that his annuity was calculated under section 8339(a) according to his years of service without regard for the 40% minimum.

6. 5 U.S.C. § 8336(a) (1988) provides: "An employee who is separated from the service after becoming 55 years of age and completing 30 years of service is entitled to an annuity."

7. 5 U.S.C. § 8338(a) (1988) provides in relevant part: "An employee who is separated from the service ... after completing 5 years of civilian service is entitled to an annuity beginning at the age of 62 years."

vice retirement benefits be subject to a division in accord with the following terms:

1. *Retirement Benefits.* Petitioner BARBARA L. VAGG has a vested interest in respondent's deferred [8] retirement benefits in the civilian federal civil service retirement system by reason of his employment with McClellan Air Force Base said interest having a value of .50 × .9697% [sic] of the monthly entitlement of respondent's retirement installment benefits commencing March 23, 1990 when respondent achieves age 62.

The divorce settlement, in addition to awarding Barbara an interest in Vagg's civil service benefits, directed Vagg to pay Barbara the sum of $300.00 per month in alimony. The portion of the settlement agreement awarding the alimony is not at issue in this appeal.

Vagg became 62 years of age on 23 March 1990. Barbara Vagg filed a formal application with OPM for apportionment of Vagg's annuity under 5 U.S.C. § 8345(j) (1988) on 30 April 1990.

In its final reconsideration decision of 10 June 1991,[9] OPM concluded that Barbara Vagg was entitled to 48.49% of Vagg's gross annuity as of 23 March 1990, the day he turned 62 years of age. In calculating the amount of Barbara Vagg's share of Vagg's deferred annuity, OPM computed a hypothetical deferred annuity under 5 U.S.C. § 8338. The amount of the hypothetical deferred annuity was identical to the amount of disability retirement that Vagg was actually receiving as of 23 March 1990 because OPM: (1) calculated the base amount for both annuities according to Vagg's years of service as of the date of Vagg's actual disability retirement;

and (2) included in the computation of the hypothetical deferred annuity all COLA increases actually received by Vagg between 1974, the year he separated from federal service, and 1990, the year he attained age 62. *See* 5 U.S.C. § 8339(a), (g). OPM reasoned that this result was dictated by California law as applied by this court in *Levy v. Office of Personnel Management,* 902 F.2d 1550 (Fed.Cir.1990).

Vagg appealed the final reconsideration decision of OPM to the Board. The Board affirmed OPM's decision by its initial decision of 10 March 1992. By its order of 25 June 1992, the Board denied Vagg's petition for review of the initial decision because it did not meet the criteria set forth at 5 C.F.R. § 1201.115 (1992).

*Discussion*

■ This court must apply California community property law in deciding whether the Board properly apportioned Vagg's retirement benefits under the divorce judgment. We must affirm the Board's action unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7703(c) (1988). *See Cheeseman v. Office of Personnel Management,* 791 F.2d 138, 140 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 844 (1987); *Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984). Further, this court is bound by its prior interpretation of California law in *Levy.*

In *Levy,* as in this case, the issue on appeal was whether the Board properly apportioned a federal civil service retirement annuity pursuant to a California divorce judgment. The

8. The Superior Court's judgment shows the word "deferred," handwritten, inserted above the typewritten word "service," which is stricken out.

9. OPM's initial decision of 27 August 1990 apportioned to Barbara Vagg 48.49% of $665.00—the amount that Vagg's deferred annuity would have been had he not retired on disability, but rather a deferred annuity payable to Vagg upon reaching age 62. This figure did not include any COLA increases. Upon Barbara Vagg's timely request for reconsideration, OPM issued a new initial decision on 12 April 1991 changing Barbara Vagg's apportionment from $339.00 (48.-49% of $665.00) to $931.00 (48.49% of Vagg's

gross annuity as of 1 April 1990). OPM reasoned that since Vagg had served for over 27 years, his disability annuity should be computed on the basis of actual years of service under 5 U.S.C. § 8339(a) rather than the 40% minimum formula under section 8339(g). Therefore, in Vagg's case, the commencing rate of a hypothetical deferred annuity under section 8338(a), effective on the date of Vagg's disability retirement, would have been identical to the commencing rate of his actual disability annuity, had Vagg been entitled to receive a deferred annuity prior to age 62. Vagg requested reconsideration of OPM's new initial decision.

facts in *Levy*, however, are distinguishable from the facts of the case at hand. In *Levy*, the husband had retired on disability under section 8337 after only six years of federal service. *Levy*, 902 F.2d at 1551. The divorce judgment entered by the Orange County Superior Court of the State of California awarded the former wife one-half of Levy's civil service retirement benefits effective upon Levy's attaining the age of 62. The Board concluded that Levy's former spouse was entitled to one-half of the total monthly benefits Levy was receiving as of his 62nd birthday. *Id.* at 1552.

The Federal Circuit reversed and remanded the case to the Board for a recalculation of the amount of retirement benefits that Levy's former spouse was entitled to pursuant to the California divorce judgment. *Id.* at 1555. Because Levy's length of federal service had been relatively short, Levy's monthly benefits would have been significantly smaller if he had retired under section 8338.[10] The court concluded that "[o]nly the amount attributable to retirement is properly subject to division; the remaining amount is attributable to Levy's disability, not retirement, and therefore his sole and separate property." *Id.* at 1553.

The outcome in this case turns on the construction of the last operative sentence in *Levy*, which states:

> [T]he Board is to enter an order requiring respondent OPM to calculate the amount of regular longevity benefits to which Levy would have been entitled had he retired in 1966 under 5 U.S.C. § 8338 and to pay Mrs. Levy one-half of that amount.

*Id.* at 1554–55. The *Levy* decision leaves open the question whether the hypothetical deferred annuity of a disability annuitant that is subject to apportionment is increased by COLA's between the date that the annuitant is deemed to have retired (the date of the disability retirement) and the date the annuitant attains the age of 62.

Vagg urges an interpretation of the operative sentence in *Levy* that would not include COLA increases to the hypothetical deferred annuity between 1974, the year he retired on disability, and 1990, the year Vagg reached 62 years of age. According to Vagg's calculations, his former spouse is entitled to 48.-49% of $665.00. The base of $665.00 is the amount of the deferred annuity Vagg would have received under 5 U.S.C. § 8338 upon reaching age 62 had he resigned from federal service in 1974 rather than retiring on disability. Vagg argues that the COLA increases he received between 1974 and 1990 are attributable solely to his disability annuity, which is his separate property under California law.

The government asserts that OPM properly apportioned Vagg's annuity under California law as interpreted by this court in *Levy*. Under *Levy*, the government argues, a civil service annuitant whose disability annuity is exempt from division as marital property under California law until he reaches eligibility for deferred retirement, based on age and service at age 62, is nevertheless *deemed* to have "retired" on a deferred annuity under section 8338(a) effective on the date of the individual's actual disability retirement under section 8337. Because *Levy* directs that an annuitant in such a case must be deemed to have "retired" as a deferred annuitant on the date of his actual disability retirement, the deferred annuity must be *deemed* to have commenced on the same date.

The government further argues, if Vagg's deferred annuity under section 8338(a) had commenced on the date of his actual disability retirement, that deferred annuity would have been subject to all of the same periodic COLA increases which were applicable to his disability annuity since that date. In the present case, because the commencing rate of Vagg's hypothetical deferred annuity under section 8338(a) in 1974 would have been identical to the commencing rate of his actual disability annuity, all of Vagg's current

---

**10.** Levy's disability annuity was calculated on the basis of the "minimum annuity" formula applicable to disability retirements after relatively brief service, 5 U.S.C. § 8339(g), rather than the general annuity formula, 5 U.S.C. § 8339(a), which would apply to the computation of a disability annuity if the annuitant had completed more than 21 years and 11 months of service at the time of his retirement. Thus, Levy's actual commencing disability annuity was considerably larger than a hypothetical deferred annuity commencing on the same date would have been.

monthly annuity is subject to division under 5 U.S.C. § 8345(j). According to the government's calculations, Barbara Vagg is entitled to approximately $931.00 a month, 48.49% of Vagg's current monthly annuity.

### The Hypothetical Deferred Annuity

To close the gap left open by the last operative sentence in *Levy*, this court must look to California law. In *Levy*, we cited with approval a California case with a fact pattern strikingly similar to the facts of the case at hand. In, *In re Marriage of Samuels*, 96 Cal.App.3d 122, 158 Cal.Rptr. 38 (1979), as in the present case, the retiree spouse was a civilian federal employee who had retired under CSRS, on grounds of disability under section 8337, prior to the age at which he would be entitled to a deferred age-and-service retirement under section 8338. Thus, there was a lapse of time between the date that the retiree's disability annuity commenced, and the date upon which he would attain age 62, the date of eligibility for a deferred annuity under section 8338.

There was a further similarity between the factual circumstances of the present case and the retiree spouse in *Samuels*. In each case, the CSRS annuitant spouse had completed more than 21 years and 11 months of creditable federal service at the time of his disability retirement. Therefore, in each case, the disability annuity of the annuitant involved, as computed according to section 8339(a), the general annuity formula under CSRS, exceeded the "minimum annuity" formula, applicable to disability annuities only, in section 8339(g). Thus, had the annuitant in *Samuels* been 62 years of age on the date of his disability retirement, the commencing rate of a deferred annuity under section 8338(a) would have been identical to the amount of

the disability annuity under section 8337 that he actually received.

In *Samuels*, the court first held that the retiree spouse was entitled to receive his entire disability as his separate property until reaching age 62. *Samuels*, 158 Cal.Rptr. at 42. The court, however, continued:

But after John [Samuels] reaches the minimum age (62 years) credited with past service longevity (5 years), the predominant purpose of such payments shifts to retirement support rather than disability compensation resulting from premature retirement [citation omitted]; at that point the true character of the disability benefits commensurate in value to the fully matured retirement benefits based upon completion of five years of service during marriage and salary rank (§ 8339) effectively constitutes community property irrespective of the label affixed to John's pension benefits. [citation omitted] Since the benefits payable are of like value (i.e., no excess) and are fully attributable to the requisite 5 years employment (and contributions made) during coverture, the total sums received by John after reaching 62 years of age comprise divisible community assets which under the circumstances reflected require no proportionate allocation.

*Id.* In reaching its conclusions, the court relied on the leading California Supreme Court case, *In re Marriage of Stenquist*, 21 Cal.3d 779, 148 Cal.Rptr. 9, 582 P.2d 96 (1978), which this court thoroughly discussed in the *Levy* opinion.[11]

In order to sustain the position of OPM and the Board in this case, we have to treat Mr. Vagg as actually having "retired" in 1974 when he separated from federal civil service and immediately began receiving benefits in the form of a disability annuity. This con-

---

11. A second California case cited in *Levy*, *In re Marriage of Pace*, 132 Cal.App.3d 548, 183 Cal. Rptr. 314 (1982), also involves the situation of a former federal civil service employee retiring on disability under section 8337 before his rights to an immediate age-and-service annuity under section 8336 had vested. Like the annuitants in the case at hand and in *Samuels*, the amount of Mr. Pace's disability retirement annuity was equal to the amount of a hypothetical deferred annuity under section 8338. Because of his long years of service, the disability annuity had been calculat-

ed according to years of service under section 8339(a). Citing *Stenquist* and *Samuels*, the court held: "Until he reaches [age 62], his benefits compensate him for his injury and are his separate property; at age 62, the benefits serve as retirement support and are divisible community property." *Pace*, 183 Cal.Rptr. at 317. The court concluded that Mr. Pace's former spouse was entitled to seven-fifteenths (as directed by the divorce judgment) of the total amount of monthly benefits Pace was receiving as of the date he attained age 62. *Id.* at 318.

struction of "retired" is consistent with federal law. *See Horner v. Benedetto*, 847 F.2d 814, 818 (Fed.Cir.1988) (an employee is "retired" from federal civil service when he is first eligible to receive an immediate annuity); *Schellfeffer v. United States*, 170 Ct.Cl. 178, 343 F.2d 936, 941 (1965) (same). Further, this construction is consistent with the holding in *Levy*. In *Levy*, this court, interpreting California law, created a constructive right to receive the deferred annuity under section 8338 as of the date the annuitant retired under the disability retirement provision of section 8337.

The hypothetical deferred annuity, or constructive right to receive the deferred annuity, is likewise consistent with the holding in *Samuels*. Despite the fact that the court did not specifically explain its calculations, the only way the amount of the disability annuity under section 8337 that Samuels was receiving at age 62 can be identical to the amount of a hypothetical deferred annuity under section 8338 is if all COLA increases received by Samuels from the date he retired on disability until he reached the age of 62 are included in the equation.

In terms of dollars, this results in an allotment of $931.00 (48.49% of $1,992.00) to Barbara and $1,061.00 (51.51%) to Vagg. This appears appropriate in accordance with the division ordered by the divorce court based on her "contribution" to the development of the pension asset in accordance with California law. However, we are constrained to note that the operative consideration is a presumption by the California courts that in all cases, the purpose of "disability" automatically changes to a purpose of "retirement" on the attainment of an arbitrarily selected statutory date. In Vagg's case, the pension is immediately no longer attributable to his continued disability, even though the record does not disclose a termination of his disability in fact. Barbara's need for alimony is not

subject to any such legal fiction. Although this record does not and need not disclose her needs, we do not know whether the alimony payment comes also out of the pension. That is a clear possibility in light of Vagg's continued disability of some 16 years. If so, it would appear on the bare facts to be inequitable that a disabled retiree would have his pension suddenly change from "disability" to "retirement" with a resultant radical decrease in income with no decrease in his needs, and that his divorced former spouse would begin receiving $1,231.00 (62%) and he $691.00 (38%), which does not appear to be in accordance with the percentages contemplated by the California divorce court or with the equitable results presumably contemplated by the California property laws.

However, it is not a proper function for this court to make determinations of allocations for the state divorce courts, and we do not pretend to do so.

### OPM's Interpretation of its own Regulations

▇▇ We are not persuaded by Vagg's arguments that OPM's regulations, 5 C.F.R. §§ 831.1711(a)(3),[12] –.1717 [13] (1990), preclude inclusion of COLA increases to Vagg's annuity between the date of his disability in 1974 and the date he reached age 62 in 1990 in the amount of annuity subject to apportionment. The Board's deference to OPM's interpretation of its own regulations was correct. An agency's interpretation of its own regulation is controlling "unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *accord United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977).

Neither 5 C.F.R. § 831.1711(a)(3) nor 5 C.F.R. § 831.1717 is plainly inconsistent with

12. 5 C.F.R. § 831.1711(a)(3) provides:
   Benefits payable to a former spouse from a retiree's annuity begin to accrue no earlier than the beginning of the month after receipt of a qualifying court order and the documentation required by § 831.1705, and terminate no later than the last day of the month before the death of the retiree.

13. 5 C.F.R. § 831.1717 provides:
   In cases where the court order apportions a percentage of the employee retirement benefit, the Associate Director will initially determine the amount of proper payment. That amount will be increased by future cost-of-living increases unless the court directs otherwise.

**1214**

OPM's decision in the present case to include all past COLA increases in calculating the amount of Vagg's annuity subject to apportionment. First, section 831.1711(a)(3) provides that no monthly payments of annuity paid to an annuitant by OPM prior to the date on which an order or decree dividing the annuity is received by OPM can be made retroactively subject to apportionment. Thus, section 831.1711(a)(3) has no bearing upon computation of the apportionment of the monthly payments, but rather only upon when the division of the monthly annuity must commence.

Second, section 831.1717 provides that the amount of an annuity payable to a former spouse will periodically increase after the first apportionment unless the divorce judgment provides that no future COLA increases apply. However, the provisions of section 831.1717 do not preclude the inclusion of past COLA increases in computing the initial apportionment.

*Conclusion*

We conclude that the Board decision awarding Barbara Vagg 48.49% of William Vagg's current monthly benefits is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. We reach this conclusion out of respect for California property law and formality of the term "retired" as construed by federal law. The Board properly concluded that the amount of Vagg's retirement annuity subject to apportionment under a California divorce judgment includes all cost-of-living-adjustment increases to his disability annuity he received between 1974, the date Vagg retired on disability under 5 U.S.C. § 8337, and 1990, the year he reached age 62 and met the eligibility requirements for a deferred age-and-service annuity under 5 U.S.C. § 8338. The decision of the Merit Systems Protection Board is affirmed.

*AFFIRMED*