30 F.3d 1533
 308 U.S.App.D.C. 166
 CELLWAVE TELEPHONE SERVICES L.P., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Thomas Domencich, Committee for a Fair Lottery, Intervenors.
FUTUREWAVE GENERAL PARTNERS L.P., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Thomas Domencich, Committee for a Fair Lottery, Intervenors.
 Nos. 92-1464, 92-1465.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 14, 1993.
Decided Aug. 16, 1994.
 
 Appeal from an Order of the Federal Communications Commission.
 Michael F. Morrone, Washington, DC, argued the cause, for appellants. With him on the joint briefs were Mark F. Evens, Michael R. Bennet, and Arthur S. Garrett, III, Washington, DC.
 Jane E. Mago, Counsel, F.C.C., Washington, DC, argued the cause, for appellee. On the brief were Renee Licht, Acting Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and Roberta L. Cook, Counsel, F.C.C. John E. Ingle, Counsel, F.C.C., Washington, DC, entered an appearance.
 On the brief for intervenors were Carl W. Northrop and E. Ashton Johnston, Washington, DC.
 Before WALD, GINSBURG, and RANDOLPH, Circuit Judges.
 Opinion for the Court filed by Circuit Judge GINSBURG.
 GINSBURG, Circuit Judge:
 
 
 1
 Cellwave Telephone Services, L.P. and Futurewave General Partners, L.P. appeal an order of the Federal Communications Commission dismissing their applications to operate and construct cellular telephone systems in two separate rural service areas. The Commission concluded that, as of the time they filed their applications, the applicants' partnership structures did not conform to FCC rules designed to preclude alien control of a broadcast licensee. We affirm.
 
 I. BACKGROUND
 
 2
 The FCC awards most licenses to construct and operate cellular telephone systems in Rural Service Areas (RSAs) by lot. Under the regulations that govern the lottery, each entrant must submit a letter-perfect application. Following the lottery, the Commission staff reviews the selected application to determine whether it complies with all applicable rules, regulations, and other requirements. The selectee may not then amend its application in order to cure any imperfection. If the application is defective, then the Commission simply dismisses it and selects a second applicant by lot. See generally Florida Cellular Mobil Communications Corp. v. Federal Communications Commission, 28 F.3d 191, 192-94 (D.C.Cir.1994) (describing the origin and nature of the lottery process for RSA licenses).
 
 
 3
 The appellants are partnerships formed pursuant to the laws of Delaware. Each was initially selected by lot to serve an RSA. The Commission dismissed their applications, however, for non-compliance with its rules for the prevention of alien ownership or control of a radio license.
 
 
 4
 Section 310(b) of the Communications Act provides that no common carrier license shall be granted to "any alien" or to "any corporation of which any officer or director is an alien or of which more than one-fifth of the capital stock is owned of record or voted by aliens...." 47 U.S.C. Secs. 310(b)(1), (3). Although the Act says nothing about partnerships, the FCC has held that no partnership in which any general partner is an alien may hold a common carrier license. See Moving Phones Partnership, L.P. v. Federal Communications Commission, 998 F.2d 1051, 1055 (D.C.Cir.1993). The Commission has treated limited partners differently, however. Because a limited partnership interest is more analogous to the equity interest of a corporate shareholder than to the managerial interest of a general partner, the FCC has applied to limited partners the same rules that it applies to the stockholders of a corporation--if the limited partner is properly insulated from managerial authority. See Wilner & Scheiner, 103 F.C.C.2d 511, pp 16-19, at 520-22 (1985), recon. in part, 1 F.C.C.Rcd. 12 (1986).
 
 
 5
 Each appellant was originally organized as a general partnership and each had some alien partners. In order to make itself eligible for the RSA lottery, each partnership decided to convert itself into a limited partnership, with the alien partners becoming limited partners. In the proceedings before the FCC each partnership asserted that it had amended its partnership agreement by a vote of the partners prior to filing their respective applications with the Commission. At the time they filed their applications, however, neither partnership had filed with the Delaware Secretary of State the documents necessary to convert itself into a limited partnership. The partnerships made their Delaware filings only after they were selected in the lottery, whereupon each applicant amended its application to reflect the filing.
 
 
 6
 The FCC dismissed the applications because, as it read Delaware law, a limited partnership does not come into legal existence until the certificate of limited partnership is filed with the Secretary of State. Therefore, the agency concluded that each partnership was still a general partnership when it filed its cellular lottery application. As such the partnerships did not comply with the Commission's alien ownership regulations and under the letter-perfect processing rule had to be dismissed.
 
 II. ANALYSIS
 
 7
 The appellants mount two challenges to the Commission's order dismissing their applications. First, they argue that their alien partners had insulated themselves by contract from managerial positions within the partnership and that the FCC should be required to take account of this fact. Alternatively, they argue that their limited partnership came into being under Delaware law prior to the filing of their RSA license applications notwithstanding their failure to file their limited partnership certificates in Delaware, and that the FCC was therefore required to recognize them as limited partnerships. The first point is foreclosed by a recent case; the second proceeds from a faulty premise.
 
 A. Contractual Insulation of Alien Partners
 
 8
 The Commission has long applied the statutory prohibition on alien ownership and alien officers and directors to entities other than corporations. See, e.g., Reexamination of the Commission's Rules and Policies Regarding the Attribution of Ownership Interests, 97 F.C.C.2d 977, 1009 (1984) (holding that Sec. 310(b)(3) applies to "all business forms"). Otherwise an alien could evade the congressional policy prohibiting alien control of a licensee merely by choosing an associational rather than corporate form of organization. In the context of a general partnership, the reason behind the rule requires that even a single alien partner be disqualifying because any partner can act on behalf of the partnership, much as, for example, an officer may act on behalf of a corporation. Therefore, the Commission will not grant a license to a general partnership that includes an alien.
 
 
 9
 Appellants argue that the Commission ought to have found that even as general partnerships they were properly structured because, prior to forming statutory limited partnerships, the alien partners had insulated themselves by contract from any management role in the partnerships. We addressed just this type of challenge to the Commission's rules on aliens and partnerships in Moving Phones Partnership, L.P., above. The Commission had rejected applications from general partnerships with aliens among the partners, based upon its earlier decision in Wilner & Scheiner, 103 F.C.C.2d 511 (1985), above. We upheld the agency's policy against both constitutional and statutory challenges. Most important for present purposes, we specifically rejected the contention that the Commission must exempt from the policy of Sec. 310(b)(3) a partnership in which the alien general partner(s) "contractually relinquish control and management," i.e. "simply because they agree not to exercise the power of their positions." Id. at 1057. The present appellant's argument is indistinguishable and we need not address it at length again in this case.
 
 
 10
 B. Limited Partnership Prior to Filing Certificate
 
 
 11
 In the alternative, the appellants argue that they became limited partnerships when all the partners signed the limited partnership agreements, and that it was arbitrary and capricious for the Commission to refuse to recognize them as such. In determining that Cellwave and Futurewave had not transformed themselves into limited partnerships as of the time they filed their lottery applications, the Commission looked to the law of Delaware, under which the partnerships were formed. Tracking the Uniform Limited Partnership Act, the Delaware code provides in seemingly unambiguous terms that
 
 
 12
 A limited partnership is formed at the time of the filing of the initial certificate of limited partnership in the Office of the Secretary of State ... if ... there has been substantial compliance with the requirements of this section.
 
 
 13
 DEL.CODE ANN. tit. 6, Sec. 17-201(b). As discussed below, however, there is some disagreement among courts in ULPA states as to whether a limited partnership certificate must have been filed in order to form a valid limited partnership for all purposes. The courts of Delaware have not spoken to this question.
 
 
 14
 In view of the uncertainty arising from the various ways in which state courts have read this "uniform" law, the Commission might well have adopted its own bright-line rule requiring that a certificate have been filed before a limited partnership can be said adequately to insulate any alien partners, irrespective of the law of the particular state. Although some limited partnerships validly formed so far as state law is concerned might be disqualified from holding a broadcast license under such a rule, the Commission might have relied upon the need for a clear, uniform, and prophylactic rule under which to evaluate applications for letter-perfect compliance with its alien control policy. We would likely defer to the agency's need for an easily administered rule. Cf. Athens Community Hospital, Inc. v. Shalala, 21 F.3d 1176, 1180 (D.C.Cir.1994) ("Some over- and under-inclusiveness would not be fatal to [a regulation] if the [agency] gave a reasonable justification for administering only rough justice").
 
 
 15
 That, however, is not what the Commission did. Instead, it decided to look to the law of the individual state in which the partnership was created in order to determine for itself whether a limited partnership had been validly formed under that state's law. (Presumably the agency's choice to proceed in this way is also entitled to deference; we needn't say, however, for the appellants do not challenge it.) Because no Delaware court has ever interpreted the relevant provision of Delaware law, the Commission set out to predict how the Delaware courts would decide the issue, much as a federal court might do in order to apply state law. See Meredith v. City of Winter Haven, 320 U.S. 228, 234, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943) (holding that where state law is unsettled, federal courts must attempt to "ascertain[ ] what the state courts may hereafter determine the state law to be"); see also 19 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Sec. 4507, at 89 (1982) ("[T]he federal court must determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although this usually will be the case) as they have been decided by state courts in the past"). Relying upon Harry David Zutz Insurance, Inc. v. H.M.S. Associates, Ltd., 360 A.2d 160 (Del.Super.1976), in which the Delaware Superior Court interpreted an analogous provision of Florida law to require strict compliance with statutory filing requirements, the Commission inferred that the Delaware court would strictly interpret the Delaware limited partnership law. It therefore concluded that, as a matter of Delaware law, neither Cellwave nor Futurewave was a limited partnership at the time that it filed its lottery applications.
 
 
 16
 The standard by which we should review this FCC interpretation of state law is not immediately apparent. The parties do not address this question, however; they join issue directly over Delaware law, which at least implies that our review is de novo, as it is when the agency has decided an issue of federal law. The Tenth Circuit has deferred to an agency's "careful and studied conclusions of law [state or federal] pertaining to a matter clearly within the agency's expertise." See Railroad Commission of Texas v. Federal Energy Regulatory Commission, 874 F.2d 1338, 1344 (10th Cir.1989); accord, Walker Operating Corp. v. Federal Energy Regulatory Commission, 874 F.2d 1320, 1332 (10th Cir.1989); see also Levy v. Office of Personnel Management, 902 F.2d 1550, 1554 n. 8 (Fed.Cir.1990) ("No amount of deference can sustain a federal agency's interpretation of state law when, as here, the agency's interpretation is in direct conflict with decisions of the state's highest court....") (emphasis in original). The question whether a general partnership has become a limited partnership prior to filing its certificate with the Secretary of State is, of course, in no way related to the Commission's expertise in regulating communications by wire and radio. We have no occasion today, therefore, to accept or reject the Tenth Circuit's standard for deference.
 
 
 17
 A more general principle of administrative law counsels against our deferring to the Commission in this case. Deference is appropriate when the agency has expertise in a particular area or the Congress has entrusted the agency to administer a particular statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Neither condition obtains here. Cf. Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991) (holding that a federal appellate court must review de novo a district court's interpretation of state law). Therefore, we shall address the question of Delaware law de novo.
 
 
 18
 As we have seen, Delaware statute law unambiguously provides that "[a] limited partnership is formed at the time of the filing of the initial certificate of limited partnership in the Office of the Secretary of State ... if ... there has been substantial compliance with the requirements of this section." DEL.CODE ANN. tit. 6, Sec. 17-201(b). To be sure, some state courts have held that a limited partnership can come into existence under the ULPA without a certificate's actually being filed. In those cases, however, the party arguing against limited partnership status--whether a general partner attempting to dilute his liability or a third party who had dealt with the partnership--had received notice of the partnership's purportedly limited status. See, e.g., Shindler v. Marr & Associates, 695 S.W.2d 699, 702-03 (Tex.App.1985) (discussing cases). In other words, they had accepted the limitation of liability before dealing with the partnership; that the certificate had not been filed was a fortuity from which they were seeking (unsuccessfully) to profit. Those cases are not relevant to our present concern. Even in that context, moreover, many courts have interpreted the ULPA by its terms to require strict adherence to the filing requirements. See, e.g., Deporter-Butterworth Tours, Inc. v. Tyrrell, 151 Ill.App.3d 949, 104 Ill.Dec. 821, 827, 503 N.E.2d 378, 384 (1987) ("Until [the certificate] is filed, the partnership is not formed as a limited partnership and all partners will be treated as general partners").
 
 
 19
 The petitioners point to no case that suggests that the Delaware Supreme Court would recognize the legal status of their partnership even inter se. It is that much less likely to hold that such a limited partnership would be valid not only among the partners but as between the partnership and a third party. See, e.g, Grenada Bank v. Willey, 705 F.2d 176, 178 (6th Cir.1983) ("Cases construing the ULPA are in accord that a failure to comply with the statutory requirements for establishing a limited partnership, such as recording, does not void the creation of an association between the partners, but does preclude those partners from claiming the status of limited partners when dealing with third parties who are without notice of the limited liability due to a failure to record") (emphasis in the original). If the partnership is not limited with respect to third parties, then an alien partner could effectively direct the course of the partnership by entering into third party contracts. Absent any indication to the contrary emanating from any Delaware court, we see no reason to depart from the plain meaning of the Delaware statute, which clearly states that a limited partnership is formed only when the certificate is filed. Cf. Hayward v. Gaston, 542 A.2d 760, 768 (Del.1988) (Delaware courts give state statutes "literal construction" unless that construction "leaves a result inconsistent with the general statutory intention"); Richardson v. Wile, 535 A.2d 1346, 1348 (Del.1988) (same).
 
 III. CONCLUSION
 
 20
 For the reasons set out above, we hold that the Commission properly rejected the Cellwave and Futurewave applications to serve RSAs. The order of the Commission is therefore
 
 
 21
 Affirmed.